UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No. 02-0273 (PLF) |
| OWEN A. WILLIAMS, | ) ) | |
| Defendant. | ) ) | |

OPINION AND ORDER

On January 28, 2021, defendant Owen Williams filed a petition for writ of error coram nobis, through which Mr. Williams seeks to vacate his 2002 guilty plea and conviction for conspiracy to defraud the United States, in violation of 18 USC § 371.  See Petition for Writ of Error Coram Nobis to Vacate and Set Aside Plea and Conviction ("Def. Pet.") [Dkt. No. 28]. Mr. Williams argues that he received ineffective assistance of counsel before, during, and after his plea hearing, and faces ongoing immigration consequences as a result of his conviction.  Id. at 7, 10-11.  The government opposes the petition, arguing that Mr. Williams' claim of ineffective assistance of counsel is foreclosed by Chaidez v. United States, 568 U.S. 342 (2013). See United States' Opposition to Petitioner's Petition for Writ of Error Coram Nobis ("Gov't Opp.") [Dkt. No. 38] at 1.  For the following reasons, the Court concludes that Mr. Williams has not established a cognizable claim of ineffective assistance of counsel, and he therefore is not entitled to relief under a writ of error coram nobis.[1]

---

[1] The Court has reviewed the following documents in connection with the pending motion:  Information [Dkt. No. 1]; Statement of Facts [Dkt. No. 9]; Judgment in a Criminal Case ("Judgment") [Dkt. No. 18]; Defendant's Petition for Writ of Error Coram Nobis to Vacate and Set Aside Plea and Conviction with Supporting Declaration of Petitioner/Defendant ("Def. Pet.")

I. BACKGROUND

A. *Defendant Owen Williams*

Mr. Williams is a Jamaican citizen who lawfully entered the United States in 1985, approximately seventeen years before he was charged in this criminal action. Def. Pet. at 25; Williams Aff. at 2. On June 25, 2002, the United States charged Mr. Williams by information with one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371. See Information. The charge arose out of Mr. Williams' role in a conspiracy to buy and sell homes to purchasers whom he fraudulently qualified for loans with the Federal Housing Administration ("FHA"), buyers who in fact did not have sufficient income to qualify for the loans. Id. at ¶¶ 6-13. The information alleged that Mr. Williams "cause[d] the lenders to issue FHA-insured loans to buyers in amounts that were more than the properties were actually worth, thus creating a large amount of illegal proceeds when the properties were 'flipped' to the buyers." Id. at ¶ 15. Mr. Williams distributed the proceeds of these sales among himself and his co-conspirators. Id. at ¶ 9.

On July 12, 2002, Mr. Williams pleaded guilty to one count of conspiracy. Def. Pet. at 5; Gov't Opp. at 2. Mr. Williams was represented at his plea hearing and subsequent sentencing by defense counsel Grandison Hill. See Def. Pet. at 6. At the plea hearing, Mr. Williams waived his right to an indictment and to a jury trial. Id. at 5; Plea Tr. at 5:14-7:15. He stated on the record that he understood all of his constitutional and statutory rights, which he

---

[Dkt. No. 28]; Affidavit of Owen Williams ("Williams Aff.") [Dkt. No. 28-1]; July 12, 2002 Transcript of Plea Hearing ("Plea Tr.") [Dkt. No. 28-2]; June 26, 2003 Transcript of Sentencing ("Sentencing Tr.") [Dkt. No. 28-3]; United States' Opposition to Petitioner's Petition for Writ of Error Coram Nobis ("Gov't Opp.") [Dkt. No. 38]; and Petitioner's Reply to United States' Response in Opposition to Petitioner's Petition for Writ of Error Coram Nobis ("Def. Reply") [Dkt. No. 43].

2

waived by pleading guilty, and was aware of both the statutory maximum sentence and the advisory Federal Sentencing Guidelines. See Plea Tr. at 5:14-7:15, 9:7-12:17. With respect to the immigration consequences of his plea, the record includes the following exchange:

> THE COURT: Mr. Williams where were you born?
>
> THE DEFENDANT: Jamaica.
>
> THE COURT: I need to tell you that if you are not a citizen of the United States, you are advised that conviction of this felony offense may have the consequences of deportation or exclusion from admission to the United States or denial of naturalization pursuant to the laws of the United States. Do you understand that?
>
> THE DEFENDANT: Yes, I understand that.

Plea Tr. at 8:3-11. On June 26, 2003, the Court sentenced Mr. Williams to twelve months and one day of imprisonment, three years of supervised release, and restitution in the amount of $184,888.00. See Judgment; Sentencing Tr. at 26:22-28:23. Mr. Williams completed his sentence of incarceration, followed by supervised release, in May of 2004. See Def. Pet. at 7; Williams Aff. at 3.

### B. Co-Conspirator Kerry Newman

Mr. Williams' conspiracy involved a co-conspirator, Kerry Newman, who pled guilty approximately eight months before Mr. Williams entered his guilty plea. See Williams Aff. at 3; United States v. Newman, 74 F. Supp. 3d 484, 486 (D.D.C. 2014), rev'd in part and remanded, 805 F.3d 1143 (D.C. Cir. 2015). Like Mr. Williams, Mr. Newman was a Jamaican citizen and a lawful permanent resident of the United States. See Def. Pet. at 6. Mr. Newman was also represented at his plea and sentencing proceedings by defense counsel Grandison Hill. See id.; Gov't Opp. at 8.

On November 21, 2011, Mr. Newman filed a petition for writ of error <u>coram nobis</u> with this Court. <u>See</u> Petition for <u>Writ</u> of <u>Coram Nobis</u> ("Newman Pet."), <u>United States v. Newman</u>, Crim. No. 01-361 (D.D.C. Nov. 21, 2011) [Dkt. No. 38]. Like Mr. Williams, Mr. Newman requested that the Court vacate his prior plea and conviction. <u>Id</u>. at 2. Mr. Newman identified two deficiencies that he alleged constituted ineffective assistance of counsel: "(1) his counsel failed to provide any advice regarding the risk of deportation prior to his plea; and (2) his counsel affirmatively misadvised him regarding the risk of deportation after his plea was entered, but before and during sentencing." <u>United States v. Newman</u>, 74 F. Supp. 3d at 489. To support these claims, Mr. Newman provided the following evidence of Mr. Hill's misstatements from the record at sentencing:

> MR. HILL: . . . I am a little bit concerned about the INS situation. And especially in this climate today . . . The problem is that [Mr. Newman's] caught betwixt and between. If the Court should sentence [Mr. Newman] to more than a year and a day, as I understand it, that will trigger, may trigger some INS interest and possibly some difficulties. If the Court should sentence him to a sentence of less than a year, Mr. Newman will of course have to spend more time, if the Court gave him time, more time in jail. And we chatted about that and it's Mr. Newman's position that he would rather avoid any problem with INS because of his commitment to [his] family.

Newman Pet. at 14 (quoting September 19, 2002 Transcript of Sentencing, <u>United States v. Newman</u>, Crim. No. 01-361 (D.D.C. Nov. 21, 2011) [Dkt. No. 38-3] at 18:6-17). Government counsel also stated that if the sentence were more than a year and a day, "there may be some INS implications . . . [T]his would be something I suggest the Court take into consideration." <u>United States v. Newman</u>, 74 F. Supp. 3d at 486-87. The Court relied on these misstatements by counsel and sentenced Mr. Newman to less than a year and a day – which meant he could receive no good time credits and actually would serve more time in prison than if the longer sentence

4

had been imposed.  Id. at 487.  The Court stated that this would be "beneficial to [Newman] with respect to the INS."  Id.  The Court later recognized that in making these misstatements, "the prosecutor, Newman's defense attorney, and the Court were all wrong.  Newman's deportation was a virtual certainty."  Id.

The Court nevertheless denied Mr. Newman's ineffective assistance of counsel claim, concluding that he could show no prejudice from the plea proceeding because the misstatements by defense counsel occurred at the time of sentencing, not at the time the Court accepted the plea.  See United States v. Newman, 74 F. Supp. 3d at 489.  The court of appeals disagreed, stating that "nothing about the temporal relationship between Newman's plea and his attorney's inaccurate advice categorically bars Newman from establishing prejudice."  United States v. Newman, 805 F.3d 1143, 1147 (D.C. Cir. 2015).  It therefore remanded to this Court for a determination of whether Mr. Newman could establish prejudice.  Id. at 1147-48.

After remand, the parties filed a stipulated disposition whereby the government agreed that the Court should vacate Mr. Newman's conviction, permit him to withdraw his plea, and dismiss the information.  See Joint Statement and Notice of Stipulated Disposition, United States v. Newman, Crim. No. 01-0361 (D.D.C. Sept. 30, 2016) [Dkt. No. 64] at 3-4.  The Court accepted the stipulation, stating that "defendant's attorney gave affirmative misadvice as to the immigration consequences and risk of deportation of the plea agreement and conviction."  Order, United States v. Newman, (D.D.C. Nov. 8, 2016) [Dkt. No. 66] at 1 (emphasis added).  The Court also ordered that the criminal information be dismissed.  See id.

## II.  LEGAL FRAMEWORK

"A petition for a writ of coram nobis provides a way to collaterally attack a criminal conviction for a person . . .who is no longer 'in custody' and therefore cannot seek

5

habeas relief." United States v. Newman, 805 F.3d at 1146 (quoting Chaidez v. United States, 568 U.S. at 345 n.1).  Writs of coram nobis are authorized in criminal proceedings under the All Writs Act, which provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a); see also 3 CHARLES ALAN WRIGHT & SARAH N. WELLING, FEDERAL PRACTICE AND PROCEDURE § 624 (4th ed. 2021).  This right recognizes that "a person who had completed service of his federal sentence might continue to suffer consequences because of it, since subsequent convictions might carry heavier penalties and civil rights might be affected."  WRIGHT & WELLING, supra, § 624 (citing United States v. Morgan, 346 U.S. 502, 512-13 (1954)).  The writ is only available for "'extraordinary' cases presenting circumstances compelling its use 'to achieve justice.'"  United States v. Denedo, 556 U.S. 904, 911 (2009) (quoting United States v. Morgan, 346 U.S. at 511); see also United States v. Newman, 805 F.3d at 1146; United States v. Verrusio, Crim. No. 09-0064, 2017 WL 1437055, at *8 (D.D.C. Apr. 21, 2017), aff'd, 758 Fed. App'x 2 (D.C. Cir. 2019).

"[C]ourts have traditionally applied a four-factor test to determine whether coram nobis relief is warranted: '(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character.'"  United States v. Verrusio, 2017 WL 1437055, at *8 (quoting United States v. Faison, 956 F. Supp. 2d 267, 269 (D.D.C. 2013)).  Violations of the Sixth Amendment right to counsel, including claims of ineffective assistance of counsel, are "fundamental error[s]" that may be redressed through coram nobis.  See United States v. Newman, 805 F.3d at 1146 (citing United States v. Denedo, 556 U.S. at 911).  To demonstrate a fundamental error based on

ineffective assistance of counsel, a defendant carries the burden of demonstrating "that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland v. Washington, 466 U.S. 668, 688, 694 (1984).

The Supreme Court held in 2010 that "Strickland applies" in the immigration context; the Sixth Amendment and "the weight of prevailing professional norms" require that "counsel must inform her client whether his plea carries a risk of deportation."  Padilla v. Kentucky, 559 U.S. 356, 366, 367, 374 (2010).  Unfortunately for Mr. Williams, Padilla is not retroactive.  In Chaidez v. United States, the Supreme Court concluded that Padilla "announced a 'new rule,'" and therefore "defendants whose convictions became final prior to Padilla [] cannot benefit from its holding."  568 U.S. at 346, 358 (citing Teague v. Lane, 489 U.S. 288 (1989)).  A defendant thus cannot retroactively invoke the right articulated in Padilla to prevail on a writ of error coram nobis based on a claim of ineffective assistance of counsel.  A petitioner must instead establish that a "fundamental error" existed at the time the alleged conduct took place.  See United States v. Newman, 805 F.3d at 1146.

### III. DISCUSSION

Mr. Williams' petition does not warrant coram nobis relief under the four-part test articulated in United States v. Verrusio.  See 2017 WL 1437055, at *8.  Specifically, his petition fails because he cannot demonstrate that his attorney's performance constituted an "error [] of the most fundamental character" at the time of his plea or at sentencing.  Id.[2]

---

[2]    Because Mr. Williams does not meet his burden of demonstrating a fundamental error, the Court need not decide whether his petition satisfies the other three factors of this test.

Mr. Williams' argument is premised on the assertion that "[d]efense counsel failed to disclose the already known effect of his plea and sentence on his immigration status . . . [and] failed to properly research the determinative factors in the case related to deportation." Def. Pet. at 17. He maintains that these failures constituted ineffective assistance of counsel "based on a violation of [Mr. Hill's] duty to mitigate harm under the plea agreement . . . [and] the duty to negotiate an effective plea bargain." Id. at 15 (citing Glover v. United States, 531 U.S. 198 (2001); Missouri v. Frye, 566 U.S. 134 (2012); Lafler v. Cooper, 566 U.S. 156 (2012)). Mr. Williams' affidavit states that "had [he] known the immigration consequences of [his] guilty plea at the time [he] would have sought to go to trial or would have had attorney Hill negotiate a different plea agreement to try and avoid immigration consequences due to [his] significant and deep family, life, and monetary ties to the United States." Williams Aff. at 3.

The Court is sympathetic to Ms. Williams' situation. As the Supreme Court concluded in Padilla, "[t]he weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation." Padilla v. Kentucky, 559 U.S. at 367. The Supreme Court, however, could not have been more clear about the non-retroactive effect of this new rule: "[D]efendants whose convictions became final prior to Padilla [] cannot benefit from its holding." Chaidez v. United States, 568 U.S. at 358. Padilla was decided in 2010. Mr. Williams' conviction became final when he was sentenced on June 26, 2003. Moreover, the D.C. Circuit concluded in the case of Mr. Williams' co-conspirator, Mr. Newman, that a claim based on the "fail[ure] to research and consider potential immigration consequences

---

The government concedes, however, that "a more usual remedy is not available" because Mr. Williams is no longer in custody and therefore cannot file a petition under 28 U.S.C. § 2255. Gov't Opp. at 8. The Court agrees and concludes that a petition for a writ of error coram nobis is the appropriate avenue for Mr. Williams' requested relief.

8

when negotiating [defendant's] plea deal . . . is foreclosed by Padilla and Chaidez." United States v. Newman, 805 F.3d at 1146-47.

In Newman, the court of appeals rejected the argument that "although defense attorneys had no duty to advise their clients about the immigration consequences of pleading guilty prior to Padilla, they nonetheless had a duty to research those consequences and take them into account when negotiating a plea deal." United States v. Newman, 805 F.3d at 1147. There simply was no such duty before Padilla. The court of appeals nevertheless concluded in Newman that if a lawyer chooses to advise a client of the immigration consequences of their plea, the advice must be accurate. See id. In other words, if a lawyer "affirmatively misrepresent[s]" or misstates "the potential immigration consequences of a conviction," such conduct could support a cognizable claim of ineffective assistance of counsel. Id. The court reasoned that even before Padilla, providing "erroneous immigration advice" could form the basis of an ineffective assistance of counsel claim because this conduct would infringe a criminal defendant's fundamental right to effective representation under the Sixth Amendment – a right that was established "at the time" of Mr. Newman's conviction. Id.

The facts of Mr. Williams' case are different from those of Mr. Newman. Mr. Williams offers no evidence that Mr. Hill ever affirmatively misadvised him about his immigration consequences or violated a fundamental right established at the time of his conviction – that is, at or in connection with his plea or sentencing. To the contrary, he concedes that Mr. Hill never made an affirmative misstatement about the immigration consequences of his plea; he focuses instead on Mr. Hill's lack of engagement throughout the plea bargaining process. See, e.g., Def. Pet. at 19 ("Counsel did not give already known advice about the possible immigration consequences however, and if he would have it would have been patently

9

wrong as with his other client."); Williams Aff. at 3 ("Attorney Hill did nothing to my knowledge to try to mitigate the criminal exposure and immigration exposure I had due to the charges. It was as if there was no significant issue in that arena until one day I met with him and he politely told me be prepared to serve some time in prison."). If such conduct occurred today, it might support a claim under Padilla, but Mr. Williams pleaded guilty over seven years before the Supreme Court decided Padilla. Mr. Williams thus "cannot benefit from its holding." Chaidez v. United States, 568 U.S. at 358.

Mr. Williams argues that the Supreme Court in Chaidez "did preserve the right of an immigrant whose conviction became final before Padilla to obtain relief if the immigrant can show that he or she was affirmatively misadvised regarding the immigration consequences of his criminal case or that a defense lawyer violated an established constitutional duty such as failing to negotiate effectively to mitigate harm in the plea." Def. Pet at 13. This statement is misleading. The Court in Chaidez stated that prior to Padilla, "decisions reasoned only that a lawyer may not affirmatively misrepresent his expertise or otherwise actively mislead his client on any important matter," and that these decisions "co-existed happily with precedent, from the same jurisdictions (and almost all others), holding that deportation is not 'so unique as to warrant an exception to the general rule that a defendant need not be advised of the [collateral] consequences of a guilty plea.'" Chaidez v. United States, 568 U.S. at 355 (quoting United States v. Campbell, 778 F.2d 764, 769 (11th Cir. 1985)). Nowhere in Chaidez did the Court "preserve the right" for defendants sentenced before Padilla to demonstrate violations premised on "failing to negotiate effectively to mitigate harm in the plea." See Def. Pet. at 13.

Mr. Williams nevertheless insists that Mr. Hill "failed to comply with the normal professional standards of the time." Def. Pet. at 17 (citing Glover v. United States, 531 U.S. 198

10

(2001); Missouri v. Frye, 566 U.S. 134 (2012); Lafler v. Cooper, 566 U.S. 156 (2012)).  This argument fails for two reasons.  First, contrary to Mr. Williams' citation, Glover does not stand for the proposition that there is a "duty to mitigate harm under the plea agreement."  Def. Pet. at 17.  The Supreme Court in Glover focused solely on articulating the correct prejudice analysis for "counsel's failure to object to an error of law affecting the calculation of a sentence," and the decision explicitly stated that "the question of deficient performance is not before [the Court]."  Glover v. United States, 531 U.S. at 203, 204.  And second, as discussed above, Mr. Williams' argument that Mr. Hill violated his "duty to negotiate an effective plea bargain" is foreclosed by the D.C. Circuit's decision in Newman.  In Newman, the court of appeals clearly stated that "it makes no sense to suggest that although defense attorneys had no duty to advise their clients about the immigration consequences of pleading guilty prior to Padilla, they nonetheless had a duty to research those consequences and take them into account when negotiating a plea deal."  United States v. Newman, 805 F.3d at 1147.  For these reasons, Mr. Williams fails to state a cognizable claim of ineffective assistance of counsel.  His petition falls squarely within the scope of Padilla and Chaidez, and he does not prove that a "fundamental error" existed at the time of his conviction.  Accordingly, it is hereby

> ORDERED that Mr. Williams' [Dkt. No. 28] Petition for Writ of Error Coram Nobis to Vacate and Set Aside Plea and Conviction is DENIED.

> SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE:  August 9, 2022